### THE CHAS. E. SOPER.[1]

### THE OSSEO.[1]

*(District Court, F. D. New York. November 16, 1883.)*

1. COLLISION—STEAM-BOAT AND TUG— CROSSING COURSES—FAULT IN NOT HOLD-ING COURSE—FAULTY LOOKOUT.

   A collision occurred between the tug S. and the steam-boat O., in the East river, in the day-time, in clear weather, under the following circumstances: The tide was flood. The O. had left Fulton market pier, where she had lain head down the river, and rounded out, bound up the river. The S. was coming down near midstream. Abreast, or nearly so, and between the S. and the New York shore, was a tug towing a schooner on a hawser down stream. Ahead of the S., coming up, was a tug with two barges along-side, and between this tow and the New York shore was another tug and schooner. The S. could not pass to port of the barges, owing to the closing up of the other vessels, and starboarded, and had just cleared the barges when she struck the O. on the port side. *Held,* that the S. was not in fault for sheering across the bows of the barges, nor for not stopping and backing when she found she could not pass the barges to port; nor was the collision caused by the S. being within 20 yards of the vessels going down, in violation of a state statute; that the omission of the S. to answer the O.'s whistle caused no change in the movements of either, and in no way conduced to the collision; that after the S. starboarded to pass the barges, the S. and the O. were on courses crossing, and the O. was in fault for straightening up the river and not holding her course, and for not seeing the S. as soon as she might have done; that the S. was also in fault for not keeping a good lookout, and seeing the O. before the S. sheered, it being highly probable that if the O. had been then seen the S. would have sheered more sharply, and removed from the O. the temptation to cross the S.'s bows. Both vessels being responsible for the collision, the damages must be apportioned.

2. SAME—CLAIM FOR SALVAGE BY VESSEL IN FAULT.

   A claim for salvage, made by the S. for towing the O. to a place of safety, after she was disabled by the collision, was rejected because the collision that made the service necessary was in part caused by the fault of the S. herself.

In Admiralty.

*Scudder & Carter,* for the Osseo.

*Edwin G. Davis,* for the Soper.

---

[1] Reported by R. D. & Wyllys Benedict, of the New York bar.

BENEDICT, J. These are cross actions arising out of a collision between the tug Charles E. Soper and the steam-boat Osseo, that occurred nearly under the Brooklyn bridge, in the East river, on the twenty-ninth day of May, 1882. The tide was flood. The Osseo had left her berth at the Fulton market pier, where she had lain head down the river, and was bound on her regular trip up the river. It was day-time, and the weather was clear. As the Osseo rounded out from her berth, the tug Soper was coming down the river, near the middle of the stream. Abreast, or nearly abreast, of the Soper, and between her and the New York shore, was a tug towing a three-masted schooner on a hawser, and also bound down the river. Ahead of the Soper, and coming up the river, was a tug with two lumber-barges along-side, and between this tug and the New York shore was another tug with a schooner in tow. As the Soper approached the lumber-barges, her intention was to pass to port of that tow, but this was rendered impossible by the closing up of the other vessels, whereupon she hove her wheel a-starboard and passed outside of the lumber-barges. When she had just cleared them she came in collision with the Osseo, striking her heavily in the port paddle-box. At the time of the blow the Soper was backing her engine and the Osseo was moving rapidly ahead. The libel of the Osseo charges that the collision was occasioned by the fault of the Soper, in that she did not keep out of the way of the Osseo, and in that she had no look-out, and did not see the Osseo in time to avoid her, and did not answer her whistle. The theory of the Osseo, put forth in her libel, is that she was about abreast of the lumber-barges and going in the same direction as they were, but faster, when the Soper changed her course to cross the bows of the lumber-barges, and, although the Osseo blew one whistle and ported, the Soper, without answering the whistle, kept on and ran into the Osseo. The answer of the Soper states that, as the Soper crossed the bows of the lumber-boats, the Osseo swung round the stern of the schooner that was towing up the river, and, when pointed to the starboard quarter of the starboard lumber-boat, attempted to cross the bows of the Soper on that course by putting on full speed, although she had half the river clear upon the Brooklyn side, and there was nothing to prevent her avoiding the Soper by stopping, or by going further towards the Brooklyn shore, instead of attempting to pass close to the lumber-boats, as she did.

Upon the argument it was earnestly contended in behalf of the Osseo that the Soper was in fault for sheering across the bows of the lumber-boats when she did. No such fault is charged in her libel, nor was the sheer a fault. That course was forced upon the Soper by the other vessels close to her, and was a proper course to pursue under the circumstances. It was also contended that the Soper was in fault for not stopping and backing when she found that she could not pass the lumber-boats to port. This fault is not charged in the libel, nor proved by the evidence. It was also contended that the

Soper was running in violation of the state law, because she was less than 20 yards from the tug and three-masted schooner towing down. The libel charges no such fault; nor was the collision caused by the Soper being within 20 yards of the vessels going in the same direction.

In regard to the faults that are charged in the libel it is my opinion that the omission of the Soper to answer the whistle of the Osseo caused no change in the movements of either boat, and in no way conduced to the collision. It is also my opinion that the Soper cannot be held in fault for not avoiding the Osseo. There was no danger of collision between the Soper and Osseo before the Soper sheered to cross the bows of the lumber-boats. The clear weight of evidence contradicts the statement of the Osseo's libel, that, when the Soper sheered, the Osseo was heading up the river abreast of the lumber barges, and shows that at that time the Osseo was astern of the lumber boats, heading towards Brooklyn. After the Soper altered her course, the Osseo straightened up in the river, and attempted to cross ahead of the Soper. If it be true that when the Soper altered her course she assumed the obligation to avoid the Osseo, because the vessels were then on courses crossing, and she had the Osseo on her starboard hand, by the same rule the Osseo became charged with the obligation to hold her course. This she did not do. On the contrary, she straightened up the river, and, as the libel admits, came parallel with the lumber barges. This fault of the Osseo plainly conduced to the collision, and is sufficient to render her responsible for the accident that ensued.

But the Soper is also in fault for not keeping a good lookout, as charged in the libel. The testimony shows that the Osseo was not seen by the Soper until after the Soper sheered and her bows had crossed the bows of the lumber-boats. There was nothing to prevent the Soper from seeing the Osseo; and before making the change of course that she did, it was her duty to observe the position of all vessels near her. And it is highly probable that if the Osseo had been seen by the Soper when the necessity for the sheer arose, the Soper would have been sheered more sharply than she was, and thereby all temptation to attempt to cross her bows removed from the Osseo. For this fault the Soper must be held to be also responsible for the accident that ensued. A similar fault is proved against the Osseo, for she did not see the Soper as soon as she might have done. Had the position of the Soper, when she altered her course, been observed by the Osseo, it is probable that the navigation of the Osseo would have been different from what it was. My conclusion, therefore, is that both vessels are responsible for the collision in question, and that the damages resulting must be apportioned between them.

In addition to the claim of damages made by the Soper, her cross-libel contains a claim for salvage services in towing the the Osseo to a place of safety after she was disabled by the collision in question,

and also a claim for compensation for towing the Osseo for several days after the collision, under a contract made in respect thereto. No objection is made to the joinder of those demands in an action like this, and they will therefore be disposed of on their merits. The claim for salvage must be rejected because the collision that made the service necessary was in part caused by the fault of the Soper herself.

As to the demand for towage services subsequently performed under a contract there is really no dispute between the parties. This demand is therefore allowed. If there be any controversy as to its amount, a reference may be had.